STATE OF MARYLAND, use of HARRY P. GRICE, JOSEPH P. GRICE and ELLA E. GRICE, by their next friend, WILLIAM H. FARR *vs.* THE COUNTY COMMISSIONERS OF CECIL COUNTY.

*Inadmissibility as evidence of the Inquisition of a Coroner's jury—Proper mode of ascertaining the professional income of a deceased Dentist.*

In an action by the children of a deceased person, against the County Commissioners to recover damages for the death of their father, who fell into a creek, and was drowned, through the alleged negligence of the defendants, the inquisition of the coroner's jury upon the body of the deceased, is inadmissible to prove that the defendants had failed to provide a suitable and safe crossing over said creek, while they were repairing the bridge over the same. Such an inquisition is not a judicial proceeding, and is inadmissible as evidence either upon a criminal prosecution, or in a civil suit.

The amount of the professional income of a deceased dentist is to be ascertained by the testimony of witnesses who knew his character

and professional reputation, as well as the extent of his practice in the place where he lived, and its neighborhood; and not by the testimony of experts.

APPEAL from the Circuit Court for Kent County.

This suit was instituted in the Circuit Court for Cecil County, whence, upon the suggestion and affidavit of the plaintiff, it was removed to the Circuit Court for Kent County, where it was tried. The case is stated in the opinion of the Court. The verdict and judgment being for the defendants, the plaintiff appealed.

The cause was submitted on briefs to BARTOL, C. J., GRASON, MILLER, ALVEY, ROBINSON and IRVING, J.

*G. W. Hume Craig* and *Albert Constable,* for the appellant.

*James A. Pearce, N. T. Biddle* and *Hiram McCullough,* for the appellees.

GRASON, delivered the opinion of the Court.

This action was brought by the children of Dr. Joseph P. Grice against the County Commissioners of Cecil County, to recover damages for the death of their father, who had fallen into Back Creek, in said county, and was drowned. The declaration alleges that "one of the public roads in said county, to wit, the public road leading from Elkton to Bohemia Bridge, through the village of Chesapeake City, was negligently suffered, on or about the 6th day of August, in the year 1878, to be out of repair and unmended, so as not to be passable with safety, whereby Dr. Joseph P. Grice, the father of the equitable plaintiffs, in travelling on said public road, and using due care, was drowned." There is a second count in the *narr.* of pretty much the same import as the first.

During the trial two exceptions were taken, the first to the refusal of the Circuit Court to permit the plaintiff to read in evidence to the jury the inquisition of the coroner's jury; and the second to the ruling of the Court in refusing to allow to be put to Dr. Gilpin the question, " What would be the fair average estimate of the professional income of a good dentist, in a town of two thousand inhabitants, where he had no opposition ?"

First Exception.—It was admitted by the appellees at the trial below, that Dr. Grice was drowned at the time and place alleged in the *narr.*, after he had passed over the temporary bridge at Back Creek, and therefore, the only purpose for which the inquisition could have been used, if introduced, would have been to prove that the appellees had failed to provide a suitable and safe crossing over Back Creek, while they were repairing the bridge over said creek at Chesapeake City. It is true that inquisitions *post mortem, de lunatico,* and inquests of office by the Attorney-General, in England, for lands escheating to the Government by reason of alienage, have been held to be *prima facie* evidence, on the ground that they are analogous to proceedings *in rem,* and made on behalf of the public; and that, therefore, no one can strictly be said to be a stranger to them. But the inquisitions *post mortem* referred to in the books as being admissible in evidence, are in the nature of judicial proceedings with respect to the seizin and value of lands. 2 *Phillips' Ev.,* 265, citing *Earl of Thanet vs. Forster, T. Jones,* 224. But inquisitions extra judicially taken, are not admissible. *Greenl. Ev., ch.* 5, *sec.* 56. The inquisition sought to be introduced as evidence in this case is not a judicial proceeding. It is a proceeding for the purpose of ascertaining the cause of death, with a view to a criminal prosecution, should the jury of inquest find that the death has been caused by unlawful violence. Such an inquisition is inadmissible either upon a criminal prosecution or in a civil suit, and

it was therefore properly ruled out by the Circuit Court as evidence in this case.

Second Exception.—The question which was put to Dr. Gilpin was clearly inadmissible. The subject-matter of the question was not such as to warrant the introduction of testimony by experts, as it was not a matter of skill or science. *Sharswood's Starkie on Ev.*, *9th Ed.*, *side page* 96, *note; Robertson vs. Stark*, 15 *N. H.*, 109 ; *Lush vs. McDonald*, 13 *Iredell*, 485. The only legal evidence of Dr. Grice's income was to be ascertained by the testimony of witnesses who knew his character and professional reputation, as well as the extent of his practice in Chesapeake City and its neighborhood.

Finding no error in the rulings of the Circuit Court, the judgment appealed from will be affirmed.

*Judgment affirmed.*

(Decided 2nd July, 1880.)