(No. 12503.—Reversed and remanded.)

Spiegel's House Furnishing Company, Plaintiff in Error, *vs.* The Industrial Commission *et al.*—(Katherine Jarrett Cloyes, Admx., Defendant in Error.)

*Opinion filed June 18, 1919.*

1. Workmen's compensation—*declarations of a deceased employee as to how he was injured are not admissible.* Declarations made by an injured employee to his attending physician are admissible when they relate to the part of the body injured, to the suffering and the symptoms but not if they relate to the cause of the injury, and the testimony of any witness as to what the injured employee said about when, where and how he was injured is not admissible.

2. Same—*jurisdiction of courts of review under Compensation act.* The circuit court, and the Supreme Court in reviewing a case under the Workmen's Compensation act, can only pass upon questions of law and cannot reverse an order of the Industrial Commission as not sustained by the evidence unless there is no competent evidence in the record tending to support it.

3. Coroner's verdict—*coroner's verdict is not admissible to establish civil liability.* A coroner's verdict or inquest is not admissible as evidence in civil suits for the purpose of establishing personal liability against any individual where the death of a person is charged or to establish a defense to such suits or for the purpose of establishing other issues between private litigants. (Contrary holdings in *United States Life Ins. Co.* v. *Vocke,* 129 Ill. 557, and in all subsequent cases, overruled.)

4. Evidence—*a judgment is not admissible against a litigant who was not a party to it.* The judgment of a court is not admissible against a litigant, either as *res judicata* or as an estoppel by verdict, unless he was a party to that judgment, and no person can be affected by any judicial investigation to which he is not a party unless his relation to some of the parties was such as to make him responsible for the final result of the litigation.

5. Same—*testimony of witnesses taken before coroner's jury is not admissible in a civil suit.* As the testimony of a witness in any suit, although prosecuted to final judgment, is not admissible against any third party in another suit who was not a party to such judgment, the testimony of witnesses taken before a coroner's jury is not admissible against either party in a subsequent civil suit for damages.

6. STARE DECISIS—*when former rulings on admissibility of evidence will not be followed.* Former rulings on the admissibility of certain documents as evidence or on mere questions of procedure ought to be followed unless they are manifestly wrong, but they may and should be changed when the ends of justice and the public good will be better served.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. OSCAR M. TORRISON, Judge, presiding.

FRANK M. COX, and ALBERT N. POWELL, for plaintiff in error.

NORMAN G. COLLINS, for defendant in error.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

The circuit court of Cook county confirmed an award by the Industrial Commission under the Workmen's Compensation act, on the application of Katherine Jarrett Cloyes, administratrix of the estate of Harry J. Cloyes, deceased, and certified that the cause, in its opinion, is one to be reviewed by this court.

The evidence produced before the Industrial Commission was in substance the following: Harry J. Cloyes was a regular employee of Spiegel's House Furnishing Company. The last day he worked for his employer was Tuesday, June 20, 1916. The next day he was not feeling well and remained at his home and took medicine for a cold. He had fever, his temperature being about 100 degrees, and it so continued until Thursday, when a physician was called for the first time. The physician thought probably that he had "grippe" but called again on Friday, when Cloyes showed him an abrasion on his arm, over which a scab had formed about the size of a nickel and there was a slight redness of the skin around the scab. The doctor did not that day attribute the condition of his patient to the injury on his arm. On Saturday the doctor found the skin around the scab was much redder in appearance and

that it had spread in every direction. He testified that it was apparent that the injury was caused by an external blow and that the trouble was infection from the injury on the arm, and that the arm was swollen; that on Sunday the patient's condition was worse and continued to grow worse until Monday, when he was sent to a hospital and an operation was performed on the same day; that he died two hours after the operation, and that his death was caused by septicemia, produced by infection of the wound.

No one saw Cloyes receive the injury, and he did not tell his employer or any of his fellow-employees about receiving it. The only proof that the injury arose out of and in the course of his employment was (1) the testimony of his widow and of his physician that he told them he received his injury at his employer's store while passing through a narrow aisle while showing customers goods in plaintiff in error's store, and by striking his arm, just above the elbow, against the sharp corner of a dresser; and (2) the coroner's verdict reciting that Cloyes came to his death June 26, 1916, from septicemia, due to an infected wound of the right arm, received at Spiegel's House Furnishing Company while in the employ of said company as a salesman, by striking his arm against a dresser. Plaintiff in error objected to the evidence of the widow and the physician and the coroner's verdict as hearsay evidence and as incompetent.

Cloyes left surviving him as dependents a minor son and his widow. He and plaintiff in error were both operating under the Compensation act, and his widow gave plaintiff in error notice in apt time that Cloyes claimed to be injured and the time and manner that he claimed to be injured.

The plaintiff in error offered the transcript of the testimony taken before the coroner's jury for the sole purpose of showing that the verdict was based on the same hearsay evidence of the same witnesses heard before the Industrial Commission and on no other testimony. That evidence

clearly proved its contention that it was hearsay testimony, and the same, in substance, as the evidence of the widow and the physician, which was objected to as hearsay and as incompetent.

The sole question raised in this case is whether or not there is any competent evidence in the record showing that the death of Cloyes was caused by an injury which arose out of and in the course of his employment. The oral testimony bearing upon that question, heard before the arbitrator and the Industrial Commission over the plaintiff in error's objection, was hearsay and incompetent. That testimony consisted of statements of the witnesses of what the deceased told them about when, where and how he received the injury and what he was doing at that time. No one testified who had any knowledge of those facts except from the statements made to them by the deceased. Declarations made by one injured, to his attending physician, are admissible when they relate to the part of his body injured, his suffering, symptoms and the like, but not if they relate to the cause of the injury. This rule is more rigorously enforced when applied to lay witnesses. *Chicago and Alton Railroad Co.* v. *Industrial Board,* 274 Ill. 336.

If the coroner's verdict in this case is held to be competent evidence, it is as clear as any proposition can well be made that plaintiff in error is to be held liable upon the declarations of Cloyes, now deceased, made at a time when he was a real party in interest and in his own interest and without the sanction of an oath, and under circumstances that the declarations could not possibly be met or refuted by plaintiff in error by other evidence or even by the right of cross-examination. This is so because the circuit court and this court, under our Compensation act, can only pass upon questions of law, and cannot reverse the order of the Industrial Commission for insufficiency of the evidence unless we can say that there is no competent evidence in the record tending to support such order. It is equally clear

that there was no competent evidence before the coroner's jury or the Industrial Commission showing or tending to show that the injury to the deceased arose out of and in the course of his employment unless we hold that the unsupported verdict of the coroner's jury is competent evidence for such purpose. Plaintiff in error was not a party to the proceedings before the coroner's jury, was not present and had no right to be present or represented in that proceeding, had no choice or right of choice in the selection of the jury, did not cross-examine and had no right to cross-examine the witnesses before that jury or to contradict the evidence tending to prove the liability against it, which it is claimed the verdict of that jury now establishes. To hold that that verdict has that effect is to condemn plaintiff in error without a hearing and to violate the most elementary and sacred rules for the administration of justice between private individuals guaranteed by our laws and our constitutions, both State and national.

The injustice and the out-and-out viciousness of such a holding will more strikingly appear to all minds if we but consider that we may at any time have another state of facts in a case that would defeat the rights of the widow and children of the deceased injured employee by a similar holding. Let us suppose that the deceased party was killed outright by revolving machinery while at work at his employment and was never able to state how the injury occurred; that the superintendent of the employer and one other fellow-employee were the only eye-witnesses to the injury; that the superintendent made declarations of the facts that showed deceased was not injured while working at his employment or by reason of such employment and died before he could testify; that a coroner's jury was empaneled and the declarations of the deceased superintendent were put in evidence before the jury by some attorney representing the employer and that the widow and children's interests were not there represented and that the

fellow-employee did not testify before the coroner's jury, and that the coroner's jury returned a verdict that deceased was killed by some other agency not connected with his employment and completely exempted the employer from all blame or connection with the death of the employee. We can readily understand that if the verdict of the coroner's jury furnishes such convincing proof of the facts therein found as is evinced by this record, the widow and children in the case just supposed might be defeated in the contest before the Industrial Commission by the introduction of the coroner's verdict although the fellow-employee might appear and testify, and particularly if the employer was able to offer the testimony of several witnesses whose testimony tended strongly to impeach his evidence. On a review of such a case, this court and the circuit court would be powerless, under the law, to weigh the evidence and to pass on its weight. It is apparent that the result of holding a coroner's verdict competent evidence in such a case will result in substituting coroner's verdicts and holdings that the injury to the deceased employee arose out of and in the course of his employment for those of the Industrial Commission, and in direct contravention of the very spirit and express provisions of the Workmen's Compensation act.

The foregoing conclusions cast no reflection upon the coroner or his juries. They are not supposed to be men educated in the law. They do their duty as they understand it. The chief blame for such results cannot be placed on the Industrial Commission. Such results have been made possible by the previous holdings of this court, in many cases of various character, that the verdict of a coroner's jury is admissible in such cases between private citizens as *prima facie* evidence to establish any fact or facts which our statute requires such juries to find when empaneled by the coroner, if such fact or facts are material in the trial of such cases. Our statute requires that every coroner, whenever and as soon as he knows or is informed that the

dead body of any person is found or lying within his county, supposed to have come to his or her death by violence, casualty or any undue means, shall repair to the place where the dead body is, take charge of the same, forthwith summon a jury and swear them to diligently make the inquiries required by the statute and to deliver to him a true inquest thereof. The jurors are required to inquire how, in what manner and by whom or what the said body came to its death, and of all the facts of and concerning the same, together with all material circumstances in anywise related to or connected with said death, and to make up and sign a verdict or true inquest.

For almost thirty years, as already indicated, this court has held that the verdict of the coroner's jury was admissible either for the plaintiff or the defendant in a civil suit for the purpose of showing *prima facie* some fact or facts found by the jury and appearing on the face of the inquest, when the proof of such fact or facts is material to some issue in the civil suit. We have held that such verdicts were competent to prove *prima facie* suicide of the assured in suits on insurance policies. (*United States Life Ins. Co.* v. *Vocke,* 129 Ill. 557; *Grand Lodge I. O. M. A.* v. *Wieting,* 168 id. 408; *Knights Templars Indemnity Co.* v. *Crayton,* 209 id. 550.) In *Pyle* v. *Pyle,* 158 Ill. 289, the case was a bill to construe a will, and on the issue of insanity of the testator the coroner's verdict that testator suicided was held admissible. The issue in a suit for damages for assault and battery was whether or not defendant was guilty of unlawful, willful and wanton conduct, and the holding was that the verdict of the coroner's jury that the defendant fired the shot that killed the deceased but was justified in the act was competent on that issue. (*Foster* v. *Shepherd,* 258 Ill. 164.) In other suits for negligently causing death it has been frequently held that the inquest of the coroner is admissible to show *prima facie* how and by what means the deceased came to his death, and any other mat-

ter properly before the coroner and appearing on the face of the inquest. (*Novitsky* v. *Knickerbocker Ice Co.* 276 Ill. 102; *Stollery* v. *Cicero Street Railway Co.* 243 id. 290.) It is said in the *Novitsky case* that it is not within the province of the coroner's jury to fix the civil liability of anyone growing out of an accident resulting in death, except in so far as the finding required to be made by the statute may have such effect. In *Devine* v. *Brunswick-Balke-Collender Co.* 270 Ill. 504, for negligently causing the death of a child in driving an auto truck, the holding is that the verdict of the coroner's jury finding that the driver of the truck "was blameless for this unfortunate occurrence, and we therefore recommend his discharge from further custody," was admissible, because the question whether or not the driver was blameless was an essential matter before the coroner's jury for their investigation and a proper matter to be included in their verdict. Under the Workmen's Compensation act our holdings have been that the coroner's verdict at the inquest on the body of the employee is admissible in evidence in a case for compensation for death of the employee, and is *prima facie* evidence tending to prove the cause of death and of the facts therein recited showing that the employee received his injury in the course of his employment. (*Armour & Co.* v. *Industrial Board,* 273 Ill. 590; *Ohio Building Vault Co.* v. *Industrial Board,* 277 id. 96; *Morris & Co.* v. *Industrial Board,* 284 id. 67.) In the last case cited it is held that the statute made it the duty of the coroner to hold an inquest when informed that it was supposed the deceased had come to his death by casualty, and that casualty means chance, accident, contingency, etc. In *Albaugh-Dover Co.* v. *Industrial Board,* 278 Ill. 179, the holding is that where the employee dies of tuberculosis of long standing, and there is no supposition that he came to his death by violence, casualty or any undue means, the coroner was not authorized to hold an inquest and that the verdict of the coroner's jury was not admis-

sible. In *Peoria Cordage Co.* v. *Industrial Board,* 284 Ill. 90, it was positively held that a finding by a coroner's jury that the death of an employee resulted from an injury while in the discharge of his duty as an employee of a certain employer is beyond the province of the coroner's jury. It was further held in that case that in any case where the coroner is authorized to act, his authority is limited to an inquiry into the physical facts and to obtaining evidence for the apprehension of any person implicated in the commission of a crime, and the verdict of his jury is not admissible to fix civil liability, "except in so far as a legitimate finding of physical facts may have that effect." It is apparent that this decision is not in accord with the principles announced and with the conclusions reached in *Armour & Co.* v. *Industrial Board, supra,* and *Morris & Co.* v. *Industrial Board, supra,* but we think that the above holdings in that case state the law as it should be, except so far as it is qualified by the above clause in quotation marks.

The decisions of this court prior to the *Peoria Cordage Co. case* have been uniform in their holdings. The departure in that case from those holdings resulted by reason of the conclusion of this court that our former decisions were wrong in principle although uniform and consistent with the views of the court therein announced. The court is of the opinion that it should be no longer the policy of this State and the holding of this court that a coroner's verdict or inquest should be admissible as evidence in civil suits for the purpose of establishing personal liability against any individual in cases where the death of any person is charged or to establish a defense to such a suit, or for the purpose of establishing other issues between private litigants of the nature indicated in the cases just reviewed. Therefore all of the foregoing cases, and all other cases of this court containing similar holdings, are as to such holdings expressly overruled. We are moved to do this for several reasons. A review of the above cases

clearly discloses that many of the cases, if not all of them, have been largely controlled by the admission in evidence of the verdicts of the coroner's jury, and in many of them such verdicts have furnished the sole evidence to establish liability. As a consequence of such practice there has resulted in this State a race and scramble by litigants to secure a favorable coroner's verdict that would influence or control in case a civil suit should be brought to establish a claim by reason of death. It is not intimated here that plaintiffs prosecuting such suits have offended more in this particular practice than defendants who are sued in such suits, and it is believed that the facts would disclose that both are alike guilty. It cannot be questioned that as a result of such practice the coroner's verdict in many cases has been, and will continue to be, a mere trap or device for the purpose of catching the unwary in such suits and that public interests intended to be served by coroner's inquests may not be so well guarded as they otherwise would be.

The allowance of coroner's verdicts as evidence in civil suits is wrong in principle and necessarily results in much injustice to litigants. A coroner, under our law, has no judicial power. Such power is vested by the constitution in the courts thereby created. (*Peoria Cordage Co.* v. *Industrial Board, supra.*) At common law the office of coroner was judicial in its nature. But if he were a judicial officer, invested with judicial powers and duties, we are unwilling to further indorse the holding that any litigant should be bound by the verdict of a coroner's jury in whose inquest he had no right to participate and did not do so. The most solemn finding or judgment of a court is not admissible against a litigant, either as *res judicata* or as an estoppel by verdict, unless he was a party to that judgment. (*Chicago Title and Trust Co.* v. *Storage Co.* 260 Ill. 485.) The rule has always been recognized that no person shall be affected by any judicial investigation to which he is not a party, unless his relation to some of the

parties was such as to make him responsible for the final result of the litigation. (1 Freeman on Judgments, sec. 154.) It is a well known and well recognized rule that the evidence of a witness or witnesses, dead or alive, in any suit, although prosecuted to final judgment, is not admissible against any third party in another suit who was not a party to such judgment. The main ground upon which this rule is based is that such third party had no right of cross-examination of such witness or witnesses. The evidence of witnesses before the coroner's jury, dead or living, is not admissible against either party in a civil suit for damages, and for the same reasons above given. (*Pittsburg, Cincinnati and St. Louis Railway Co.* v. *McGrath,* 115 Ill. 172; *Knights Templars Indemnity Co.* v. *Crayton, supra.*) If the evidence of the witnesses before the coroner's jury is not receivable against a party in the civil suit growing out of the death of the party over whose body the inquest is held and the judgment and findings of a court in another suit concerning the same death are not admissible, there is no sound reason, in our judgment, why the inquest of a coroner ought to be admissible to prove, *prima facie* or otherwise, any issue in such case.

So far as we have investigated, only two other States in this country, Iowa and Mississippi, have adopted the same rule as has this court with reference to the admissibility of the inquest of the coroner's jury as evidence in such cases. (*Metzradt* v. *Modern Brotherhood,* 112 Iowa, 522; *Mittelstadt* v. *Modern Woodmen,* 143 id. 186; *Tomlinson* v. *Sovereign Camp,* 160 id. 472; *Supreme Lodge Knights of Honor* v. *Fletcher,* 78 Miss. 377.) In the Iowa cases the admissibility of the verdict or inquest was not questioned by the parties. In the Iowa case last above cited the court indicates that it might have ruled otherwise if objections to the evidence had been raised. The decided weight of the authorities in this country is against the admissibility of such a verdict as evidence. *Ætna Life Ins.*

*Co.* v. *Milward,* (Ky.) 68 L. R. A. 285, note 296; *State* v. *Cecil County,* 54 Md. 426; *Dougherty* v. *Pacific Mutual Life Ins. Co.* 154 Pa. St. 385; *Memphis & C. Railroad Co.* v. *Womack,* 84 Ala. 149; *Krogh* v. *Modern Brotherhood,* 153 Wis. 397; *Wasey* v. *Traveler's Ins. Co.* 126 Mich. 119; *Cox* v. *Royal Tribe,* 42 Ore. 365; *Germania Life Ins. Co.* v. *Ross-Lewin,* 24 Colo. 43; *Sullivan* v. *Seattle Electric Co.* 51 Wash. 71; *In re Dolbeer's Estate,* 149 Cal. 227; *Chambers* v. *Modern Woodmen,* 18 S. Dak. 173; *Walden* v. *Bankers' Life Ass'n,* 89 Neb. 546; *Boehme* v. *Sovereign Camp,* 98 Tex. 376.

No court, we believe, has gone farther than this court to maintain the maxim or doctrine of *stare decisis* when the questions decided affect the validity and control the construction of contracts or where the rules announced have become rules of property. Rulings on the admissibility of certain documents as evidence of the character here considered, or mere questions of procedure, ought to be followed unless they are manifestly wrong, but may, and should, be changed when the ends of justice and the public good will be better served. *Rich* v. *City of Chicago,* 59 Ill. 286; 2 Lewis' Sutherland on Stat. Const. secs. 480-314.

It will not be necessary to further discuss the questions raised relating to the coroner's verdict in question, as the court holds, for the foregoing reason, that the verdict was not admissible in evidence for any purpose. There is no competent evidence in the record tending to prove that the injury to the deceased arose out of and in the course of his employment.

The judgment of the circuit court is reversed and the award set aside, and the cause is remanded to that court for such further proceedings authorized by law as may be desired.                          *Reversed and remanded.*