(No. 20709.—

NORMAN A. NELSON, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(WILLIAM PETERSON, Defendant in Error.)

*Opinion filed October 23, 1931—Rehearing denied Dec. 2, 1931.*

BANGS, CRANE & SLATER, (DRENNAN J. SLATER, of counsel,) for plaintiff in error.

McKENNA & HARRIS, and BUTLER, FOSTER, POPE & BALLARD, (JAMES J. McKENNA, FRANK R. PEREGRINE, ALLAN J. CARTER, MARGUERITE RAEDER GARIEPY, and ABRAHAM W. BRUSSELL, of counsel,) for defendant in error.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

By an application filed with the Industrial Commission, William Peterson sought the adjustment of compensation for an accidental injury which it was charged he sustained while employed by Norman A. Nelson. The arbitrator found that the relation of employer and employee did not exist at the time of the alleged injury and denied compensation. Additional evidence was heard by the commission and that body awarded compensation. On review, the circuit court of Cook county confirmed the decision of the commission and by a writ of error, issued upon the respondent's petition, the record is submitted for a further review.

Norman A. Nelson, the plaintiff in error, operates four restaurants in the city of Chicago, one of which is located at 743 South State street. William Peterson, the defendant in error, who is sixty-five years of age and unmarried, was employed at that restaurant from October, 1927, until February 22, 1928. He worked each day from nine o'clock in the forenoon until four o'clock in the afternoon and his duties were to carry trays of dishes from the dining room to the kitchen and to peel boiled potatoes in the basement. On February 22, 1928, he reported for work about an hour late, when Tony Wiswella, the cook and manager of the restaurant, informed him that his services were no longer needed and that another person had been hired in his stead. Whether the defendant in error was employed at the restaurant after that date is in dispute.

Peterson testified that on March 23, 1928, he reached the restaurant shortly before nine o'clock in the morning; that Wiswella asked him to clean the shelves in the kitchen; that he, Peterson, placed a ladder against the shelves and climbed to the top; that the ladder fell, he was thrown about six feet, his right shoulder struck an egg case and was disjointed and he suffered other injuries; that two dishwashers assisted him to his feet and shortly thereafter he was taken to the Harrison street police station; that later he was removed to the county hospital where his shoulder was set; that on the following morning his right arm was placed in a sling and he returned to the restaurant and that for a few days thereafter, by using his left arm, he performed some work.

George Miller testified before the Industrial Commission on review that on a certain day he saw Peterson, with his arm in a sling, at the restaurant of the plaintiff in error, and that Peterson worked there the day before. On cross-examination, the witness was unable to fix the day or month when he saw Peterson at the restaurant.

Five witnesses testified that the relation of employer and employee did not exist between the plaintiff in error and Peterson on March 23, 1928. Tony Wiswella had been cook for two and one-half years and was in charge of the restaurant each day until two o'clock in the afternoon. He testified that Peterson had worked at the restaurant prior to February 22, 1928, but was discharged by the witness on that day; that after his dismissal, the plaintiff in error permitted him to eat at the restaurant without paying for his meals; that Peterson visited the restaurant for that purpose after February 22, 1928, but he was not re-employed and that the witness did not direct him to clean shelves on March 23, 1928, or at any other time.

The plaintiff in error testified that he first became acquainted with Peterson in October, 1927, when he saw him in the basement of the restaurant peeling boiled potatoes; that later, on February 23, 1928, Peterson appealed to him for assistance stating that he had been discharged by Wiswella, and was in need; that he based his appeal on their common nationality, and the plaintiff in error, to assist him until he could obtain employment, paid his room rent for a short period and directed his employees at the restaurant to furnish him food without charge and allow him to warm himself in the basement; that Peterson availed himself of these privileges; that it was the duty of a certain employee to clean shelves and such work was done only at night, and that Peterson was not in the employ of, and performed no work for, the plaintiff in error after February 22, 1928.

James Oliver, cashier at the restaurant during March, 1928, testified that Peterson was not on the pay-roll and did not work in the restaurant during that month, and that, by direction of the plaintiff in error, he gave Peterson three dollars for room rent as well as some tobacco.

Charles Krugsberry, a waiter, had been employed at the restaurant about a month on March 23, 1928. He testified that he worked from four A. M. until two P. M. each

day; that Wiswella, the manager, had instructed him to give Peterson something to eat whenever he requested it and that the witness never saw Peterson work or receive wages at the restaurant.

Axel Sundstrom, who, on March 5, 1928, was transferred from another restaurant of the plaintiff in error to the one at 743 South State street, worked as cashier each day thereafter from two o'clock in the afternoon until eleven o'clock at night. He testified that Peterson did not, on or after March 5, 1928, perform work of any character at the restaurant but that, upon the order of the plaintiff in error, Peterson was allowed to eat there without charge.

It is conceded that Peterson's employment which began in October, 1927, was terminated on February 22, 1928. Whether he quit work voluntarily, as he asserts, or whether he was dismissed, as Wiswella testifies, is unimportant. Peterson neither denies that on the next day, February 23, he asked the plaintiff in error to put him to work nor that he thereafter accepted the latter's charities. Whether the relation of employer and employee was subsequently renewed and existed on March 23, 1928, is necessarily the controlling question in this case.

Peterson was the only witness before the arbitrator who testified that he had been re-employed by the plaintiff in error after February 22, 1928, and was so employed on March 23, 1928. The plaintiff in error and four of his employees at the restaurant testified that Peterson was not so employed and had not worked at the restaurant at the time in question. The arbitrator saw and heard the witnesses and found that Peterson was not an employee of the plaintiff in error on March 23, 1928, and denied compensation. Subsequently, on review before the commission, Peterson called George Miller, a casual acquaintance who lived at the same lodging house with him, to support his claim. Miller was unable to fix the day or month when

he saw Peterson at work in the restaurant, and admitted that it might have been in January or February. Peterson's employment prior to February 22, 1928, was conceded. Miller did not appear before the arbitrator and his testimony before the commission was given more than two years after March 23, 1928. Confusion on his part respecting the time when he saw Peterson in the restaurant is therefore not surprising. The manager and the other employees of the restaurant had superior opportunities for observation and of gaining knowledge whether Peterson was employed there on March 23, 1928, and considerable weight must be accorded their testimony. If Peterson was in the service of the plaintiff in error after February 22, 1928, he would not have been given meals as a matter of charity and permission to go to the basement to warm himself would not have been necessary. The finding that the relation of employer and employee existed between the plaintiff in error and Peterson on March 23, 1928, is contrary to the manifest weight of the evidence.

A claimant under the Workmen's Compensation act must prove by direct and positive evidence, or by evidence from which the inference may be fairly and reasonably drawn, that the accidental injury of which complaint is made arose out of and in the course of the injured person's employment by the person sought to be charged. (*Jolly* v. *Industrial Com.* 341 Ill. 46; *Standard Oil Co.* v. *Industrial Com.* 339 id. 252; *Berry* v. *Industrial Com.* 335 id. 374; *New Staunton Coal Co.* v. *Industrial Com.* 328 id. 89; *Madison Coal Corp.* v. *Industrial Com.* 320 id. 298; *Edelweiss Gardens* v. *Industrial Com.* 290 id. 459; *Savoy Hotel Co.* v. *Industrial Board,* 279 id. 329). It often has been said that liability under the Compensation act can not rest upon imagination, speculation or conjecture or upon a choice between two views equally compatible with the evidence but such liability must arise out of facts established by a preponderance of the evidence. (*Jolly* v. *In-*

*dustrial Com. supra; Berry* v. *Industrial Com. supra; Byram* v. *Industrial Com.* 333 Ill. 152; *Selz-Schwab & Co.* v. *Industrial Com.* 326 id. 120; *Illinois Bell Telephone Co.* v. *Industrial Com.* 325 id. 102; *Standard Oil Co.* v. *Industrial Com.* 322 id. 524; *Madison Coal Corp.* v. *Industrial Com. supra; Atlas Brewing Co.* v. *Industrial Com.* 314 Ill. 196; *Inland Rubber Co.* v. *Industrial Com.* 309 id. 43). While the testimony of the claimant, standing alone, may be sufficient to justify an award, it is the duty of the commission to weigh the whole evidence, and it is not justified in finding for one party merely because there is some testimony which, standing undisputed, would justify the finding, where the facts and circumstances in evidence show such testimony to be untrue. (*Ayer & Lord Tie Co.* v. *Industrial Com.* 324 Ill. 504; *Union Colliery Co.* v. *Industrial Com.* 317 id. 428; *Swift & Co.* v. *Industrial Com.* 302 id. 38; *Hafer Washed Coal Co.* v. *Industrial Com.* 293 id. 425). This court is not warranted in reversing the finding of the Industrial Commission unless the award made by it is shown to be clearly against the manifest weight of the evidence. (*Donk Bros. Coal Co.* v. *Industrial Com.* 325 Ill. 193; *Inland Rubber Co.* v. *Industrial Com. supra; Aladdin Coal Co.* v. *Industrial Com.* 308 Ill. 35; *Keller* v. *Industrial Com.* 302 id. 610). It is our duty, however, to weigh and consider the evidence in the record, and if it is found that the decision of the commission is without substantial foundation in the evidence, the decision must be set aside. *Jolly* v. *Industrial Com. supra; Berry* v. *Industrial Com. supra; Ayer & Lord Tie Co.* v. *Industrial Com. supra; Inland Rubber Co.* v. *Industrial Com. supra.*

The defendant in error failed to establish that he was employed by the plaintiff in error at the time he suffered the accidental injury of which he complains. The judgment of the circuit court is therefore reversed and the award of the Industrial Commission is set aside.

*Judgment reversed and award set aside.*