(No. 20951.—

THE EAGLE PICHER LEAD COMPANY, Plaintiff in Error, *vs.*
THE INDUSTRIAL COMMISSION *et al.*—(EASTON WHIT-
TEN, Defendant in Error.)

*Opinion filed December 17, 1931.*

HILL & BULLINGTON, for plaintiff in error.

MAJOR & MAJOR, for defendant in error.

Mr. JUSTICE ORR delivered the opinion of the court:

The only question presented by this writ of error is
whether an accident which caused Easton Whitten the loss
of one of his eyes arose out of and in the course of his
employment. The arbitrator found that it did not, but the
Industrial Commission reversed the arbitrator and awarded
respondent $13.82 per week for the period of temporary
disability and for 120 weeks for a total loss of sight of
the eye. This award was affirmed by the circuit court of
Montgomery county.

The injury to Whitten occurred on November 6, 1928.
At that time he was acting as a foreman in the oxide de-
partment of the Eagle Picher Lead Company. On that

day he went to work at 4:00 o'clock in the morning, and about 10:30 A. M., while opening a damper in the furnace to let the gas escape, ashes and cinders were blown into his left eye. This is testified to by Whitten and Clarence Ware, a fellow-employee. Whitten immediately walked over to Bill Hayes, another employee, who rolled a cigarette paper and endeavored to remove the particles from Whitten's eye, and specially an object which was stuck in the eye beside the pupil. His efforts were unsuccessful. James Taravella and Frank Koontz, other employees, both testified as to Hayes' efforts to render first aid. Whitten continued his work for a short time, took a bath and started to his home, about a mile from his work, at 12:00 o'clock, noon. In the meantime, according to the testimony of Whitten, he had told his superior, Dugger, of the injury. This is partially denied by Dugger, although he admits that Whitten asked him the whereabouts of the eyewash bottle. About 12:00 o'clock Whitten was seen on his way home by Mollie Richardson. He was then walking and holding his hand over his eye. Mrs. Ina Traylor and Mrs. S. E. Roseman were at Whitten's home when he arrived there about 12:30 and they both testified that his eye was red, and the latter said that he had his hand over his eye when he came into the house. Mrs. Traylor and Mrs. Roseman took Whitten to the office of Dr. H. A. Seymour, in Hillsboro, arriving there about 1:00 o'clock. The doctor examined Whitten's eye and found a foreign body embedded in the cornea of the left eye, just to one side of the pupil. He removed this particle with an instrument. The doctor stated that the eye was not much inflamed and the object appeared not to have been in the eye very long. On the following Saturday Dr. Seymour again examined the eye and found it infected as a result of the injury. Dr. Kimball was called in consultation, and later Dr. Hughes, an eye specialist, who removed the eyeball on December 8. The removal of the eyeball was necessary as a result of

the injury to Whitten's eye, which Dr. Seymour discovered when he first examined it on November 6.

There is no evidence in the record that Whitten received an injury to his eye at any place or in any way other than as above set forth, except the statement made by him that he got some ashes in his eye at home. He made this statement at a time when he thought the injury was not serious, for the purpose of protecting the accident record in the department in which he was employed. He testified that his department had gone 856 days without an injury being reported, and J. S. Barry, who had charge of the employment and safety department, and a witness for the plaintiff in error, testified that the number of days each department went without an accident was posted, that rivalry was created between the departments, and that in Whitten's department they had gone about 800 days without an accident.

It is urged that the judgment should be reversed because of the introduction of improper testimony, but regardless of the testimony objected to, there was ample evidence in the record to warrant the finding and award of the commission. This court is not warranted in reversing the finding of the Industrial Commission unless the award made by it is shown to be clearly against the manifest weight of the evidence. (*Jolly* v. *Industrial Com.* 341 Ill. 46; *Green* v. *Industrial Com.* 337 id. 514.) The record here presents the uncontradicted testimony of one witness who saw the accident at the smelter, another who tried to remove the obstacle from Whitten's eye and two other employees who saw this effort, as well as the testimony of the doctors. The record thus shows conclusively that it arose out of and in the course of the employment.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*